UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN A. GUGLIELMO and MARYANN GUGLIELMO,<br><br>Plaintiff,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; ONEWEST BANK, FSB; and DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST SERIES INABS 2007-B, HOME EQUITY MORTGAGE LOAN ASSET BACKED CERTIFICATES, SERIES INABS 2007-B,<br><br>Defendants. | CIVIL ACTION NO. 12-32M |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

## I. PRELIMINARY STATEMENT

Plaintiffs, John and Maryann Guglielmo (“Plaintiffs”), have sued to challenge the assignments of Plaintiffs' mortgage and DBNTC's authority to foreclose. Plaintiffs lack standing to challenge the assignments because Plaintiffs were not parties to these agreements and have failed to allege facts, which if proven true would render these agreements void. Even if Plaintiffs had standing to sue, Plaintiffs have not alleged facts sufficient to challenge foreclosure and instead advance merely conclusory assertions without any factual basis. For these reasons, Defendants respectfully request that this Court dismiss the complaint in its entirety.

In further support of their Motion to Dismiss, Defendants submit the following:

## II. STATEMENT OF ALLEGATIONS

On March 16, 2007, Plaintiffs signed a promissory note through which they agreed to repay a $180,000.00 loan from IndyMac Bank, F.S.B. ("IndyMac"). (“Note,” attached hereto as

*Exhibit A.*)[1] The Note required Plaintiffs to make regular monthly mortgage payments of $1,612.98 to pay back the loan with interest. (Ex. A, p. 1.) The Note expressly provided that if Plaintiffs failed to make each monthly payment, they would default on the repayment obligations. (*Id.* at pp. 2-3.) The Note was endorsed without recourse and is currently in DBNTC's possession. (*Id.*)

Repayment of the Note was secured by a mortgage on property located at 25 Knight Street in Cranston, Rhode Island. ("Mortgage" and "Property," respectively). (*See* Mortgage, attached hereto as *Exhibit B.*) The Mortgage named Plaintiffs as the "Borrowers," MERS as the mortgagee, and IndyMac as the Lender. (*Id.* at p. 1.) The Mortgage provided that MERS was "acting solely as a nominee for Lender and Lender's successors and assigns." (*Id.*) By signing the Mortgage, Plaintiffs agreed to "mortgage, grant and convey to MERS" and "to the successors and assigns of MERS" legal title to the interests conveyed through the Mortgage agreement, including "the right to foreclose and sell the Property; and to take any action required of Lender." (*Id.* at p. 3.) The Mortgage was recorded in the Cranston land evidence records on March 21, 2007, at Book 3624, Page 53. (*Id.* at p. 1.)

There are four assignments of mortgage recorded in the Property's chain of title. On December 8, 2008, MERS assigned the Mortgage to IndyMac. ("First Assignment," attached hereto as *Exhibit C.*) The First Assignment was signed by Erica A. Johnson-Seck ("Johnson-Seck"), who was identified on the assignment of mortgage as a Vice President of MERS. (*Id.*) The First Assignment was notarized and recorded on December 15, 2008 in the Cranston land evidence records at Book 3968, Page 117. (*Id.*)

---

[1] The Federal Rules of Civil Procedure require the Court to consider not only the Plaintiff's Complaint but also matters fairly incorporated within the complaint. *In re Colonial Bankers Mortgage Corp.*, 324 F.3d 12, 15 (1st Cir. 2003).

On June 30, 2009, MERS assigned the Mortgage to OneWest. ("Second Assignment," attached hereto as *Exhibit D.*) This Second Assignment was recorded in the Cranston land evidence records on July 15, 2009. (*Id.*) On January 21, 2011, OneWest assigned the Mortgage to DBNTC ("Third Assignment," attached hereto as *Exhibit E*). The Third Assignment was recorded on January 31, 2011in the Cranston land evidence records at Book 4330, Page 173. (*Id.*)

In April 2011, after Plaintiffs defaulted on their loan, DBNTC invoked the Statutory Power of Sale and foreclosed on the Property. (*See* Foreclosure Deed, attached hereto as *Exhibit F*.) On or after May 5, 2011, however, DBNTC rescinded the foreclosure sale because the Mortgage had been assigned out of sequence with the transfer and sale of Plaintiffs' loan through the Second and Third Assignments. (Complaint, ¶51.) To correct the sequence of assignments of mortgage, and to enable DBNTC to correctly foreclose on the defaulted Mortgage, FDIC, acting as receiver for IndyMac, and holder of the Mortgage following the First Assignment, executed a fourth assignment conveying the Mortgage to DBNTC ("Fourth Assignment"). (Fourth Assignment, *Exhibit G*.)[2] The Fourth Assignment was signed by JC San Pedro ("San Pedro"), who is identified as FDIC's Attorney in Fact. (*Id.*) The Fourth Assignment was notarized and recorded on November 14, 2011 at Book 4449, Page 102 in the Cranston land evidence records. (*Id.* at p. 1.) Subsequent to the Fourth Assignment, DBNTC resumed foreclosure proceedings on the Property.

On January 19, 2012, Plaintiffs filed a three-count Complaint in the United States District Court for the District of Rhode Island. Through this action, Plaintiffs request declaratory

---

[2] On July 11, 2008, the Office of Thrift and Supervision ("OTS") closed IndyMac and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for IndyMac. *See* OTS Order No. 2008-24 (visited February 6, 2015) < http://www.occ.gov/Static/ots/directors-orders/do-2008-24.pdf>.

judgment that DBNTC lacks authority to foreclose and quiet title to the Property in their favor. (Complaint, ¶¶ 103(a-i), 107(a-e).) In support of these claims, Plaintiffs challenge the validity of the Second, Third, and Fourth assignments of mortgage, claiming that the individuals who executed those assignments of mortgage did so without authority from the assignors. (*Id.* at 10-12, 18-19, 47-49, 52-54.) Plaintiffs also claim that the assigning parties to those assignments of mortgage never held a "beneficial interest" in the Property to convey to the assignees, and that the assignments of mortgage violate the recording statute, R.I. Gen. Laws § 34-11-1. (*Id.* at ¶¶ 20-22, 31-33, 55, 88.) Plaintiffs further maintain that the Second, Third and Fourth assignments of mortgage violate R.I. Gen Laws § 34-11-24 because the assignments were not executed by the original mortgagee named in the Mortgage, and because no consideration was paid to convey the mortgage. (*Id.* at ¶¶ 34, 44, 56.)

Plaintiffs' challenge to DBNTC's authority to foreclose rests on claims that MERS, OneWest, and DBNTC lack standing to foreclose because only the originating lender has the authority to exercise the statutory power of sale. (Complaint, ¶¶ 57-80.) Plaintiffs also submit a series of conclusory assertions to challenge the procedures and validity of the foreclosure sale. (*Id.* at ¶¶ 84-100.) Finally, Plaintiffs request Ten Million Dollars ($10MM) in punitive damages on the grounds that Defendants' conduct over the course of the foreclosure proceedings has been "malicious, wanton, and/or willful." (*Id.* at ¶ 112.)

## **III. STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs must allege sufficient facts, accepted as true, to “state a claim to relief that is plausible on its face.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570

(2007)). The court must "take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). "[F]actual allegations" must be separated from "conclusory statements" to permit the court to court to analyze whether the factual allegations, "if taken as true, set forth a plausible, not merely a conceivable, case for relief." *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 1993) (internal quotations omitted). Under this standard, a court must not, and should not, accept every allegation made by the complaint, "no matter how conclusory or generalized." *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). The court should dismiss a complaint if the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 566 U.S. at 678. Plaintiffs must make more than mere threadbare recitals of the elements of a cause of action or conclusory assertions of truth in order to survive a motion to dismiss. *Id.* A court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). With regard to the assignment challenges, in particular, this Court "must conduct an inquiry to determine whether a plaintiff's allegations are that a mortgage assignment was void, or merely voidable." *Wilson v. HSBC Mortg. Serv.*, 744 F.3d 1, 9 (1st Cir. 2014).

## IV. LEGAL ARGUMENT

### A. PLAINTIFFS' COMPLAINT FAILS FOR LACK OF STANDING

As a threshold matter, Plaintiffs lack standing to challenge the validity of the assignments of mortgage. Persons who are not parties to a contract "lack standing to either assert rights under that contract or challenge its validity." *Mruk v. Mortg. Elec. Registration Sys., Inc.*, 82 A.3d 527, 536 (R.I. 2013). Courts in this jurisdiction have carved out a limited exception to the general rule barring third-party standing, which permits residential mortgagors to challenge assignments of mortgage that are void, invalid, or ineffective. *Id.* at 536 (citing *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2013)). Beyond this exception, however, the Rhode Island Supreme Court has definitively established that a "mortgagor does not have standing to challenge shortcomings in an assignment [of mortgage] that render [it] merely voidable at the election of one party but otherwise effective to pass legal title." *Id.* Here, the allegations of Plaintiffs' complaint do not fit within the exception because Plaintiffs advance voidable—not void—claims.

Plaintiffs' allegations of procedural infirmities in the assignments of mortgage are merely voidable challenges. *Clark v. Mortgage Elec. Registration Sys., Inc.*, 7 F.Supp.3d 169, 177 (D.R.I. 2014). In *Clark*, the plaintiff claimed that the assignment of his mortgage was void because the individual who executed the assignment of mortgage did not have authority from MERS, the assignor. 7 F.Supp.3d at 178. The plaintiff also claimed that "no power of attorney from MERS" to the assignee or the signer was ever recorded, and that the signing individual "was a robo-signer and did not have the requisite intent to assign." *Id.* at 178-179. This Court, however, dismissed the complaint on the grounds that plaintiff had "no standing to seek redress for an assignment allegedly made without authority," since the act of signing by that individual, "if outside his authority, is merely voidable and would be actionable by MERS," not the plaintiff.

*Id.* at 179. This Court further concluded that the plaintiff's robo-signing claims "would not make the assignment void, but rather merely voidable and only if the mortgagee wanted to assert the invalidity of the signature." *Id.* at 179.

Plaintiffs here advance the same voidable challenges to the validity of the Second, Third, and Fourth assignments of mortgage as in *Clark*. Plaintiffs claim that the signing individuals to the assignments of mortgage did not have the assignors' authority to carry out those transactions. (Complaint, ¶¶ 10, 47, 52.) As in *Clark*, Plaintiffs' allegations only raise voidable challenges to the validity of the assignments of mortgage, which Plaintiffs lack standing to advance. Only the parties to these assignments of mortgage can elect to challenge the validity on these voidable grounds. *See Clark*, 7 F.Supp.3d at 178.

Similarly, Plaintiffs' allegations of recording acts violations assert procedural infirmities in the assignments, which constitute voidable challenges that are insufficient to confer standing to Plaintiffs. *See, e.g., Era v. Morton Community Bank*, 8 F.Supp.3d 66, 71 (D.R.I. 2014) (finding that a "dating abnormality" in the assigning instrument alleged to be a violation of the Recording Statute actually "makes the assignment voidable at best," this Court rejected the plaintiff's argument that the assignment of her mortgage was void on that ground). Although the parties to the Second, Third and Fourth assignments of mortgage may elect to challenge the validity of the assignments of mortgage that fail to satisfy the requirements of the Recording Statute, Plaintiffs, as third parties, lack standing to advance voidable claims. *Id*. Finally, by claiming that the Second and Third assignments of mortgage are void for lack of consideration, Plaintiffs have merely identified potential shortcomings in the execution of those assignments of mortgage and have not allege facts to establish that the assignments of mortgage were invalid or void. (Complaint, ¶¶ 29, 36).

Plaintiffs have raised only voidable challenges to the validity of the assignments of mortgage in their complaint. While actionable by the parties to those agreements, these allegations are insufficient to confer standing onto Plaintiffs under Rhode Island law. Since Plaintiffs lack standing to seek redress for voidable defects in the assignments of mortgage, the Court should dismiss the Complaint.

**B. PLAINTIFFS HAVE NO LEGAL BASIS TO CHALLENGE MERS' AUTHORITY TO ASSIGN THEIR MORTGAGE.**

Plaintiffs' complaint includes a theory that MERS lacks authority to serve as mortgagee of the Mortgage, to assign the Mortgage to IndyMac, and to invoke the Statutory Power of Sale. (Compl. ¶¶ 65, 67.) Courts in this jurisdiction, however, have consistently rejected Plaintiffs' theory. The Rhode Island Supreme Court has confirmed that MERS has the capacity to serve as a mortgagee to a mortgage when it is so named in a mortgage agreement, and the Court routinely upholds mortgages that provide MERS with authority to assign its mortgagee interests to third parties. *See Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069 (R.I. 2013); *Mruk v. Mortgage Elec. Regis. Sys., Inc.*, 82 A.3d 527 (R.I. 2013). In *Bucci*, the Rhode Island Supreme Court held that a mortgage agreement, which expressly conveyed to MERS and its assigns the Statutory Power of Sale, permitted MERS to "be a mortgagee as that term is used in § 34-11-22." 68 A.3d at 1081. In plain terms, the Rhode Island Supreme Court found that MERS "has the contractual authority to exercise [the right to foreclose]." *Id.* at 1084.[3]

The Rhode Island Supreme Court has also rejected Plaintiffs' argument that only the original lender has authority to foreclose. In *Mruk*, 82 A.3d at 537, the Rhode Island Supreme Court held that MERS had authority as mortgagee to assign the mortgage to a third party, and

[3] The mortgage agreement in *Bucci* uses identical language as the mortgage agreement in this case to convey to MERS and its assigns the power of sale. *Compare Bucci*, 68 A.3d at 1081 *with* Mortgage, Ex. B, p. 3.

that when MERS assigned the mortgage to Federal National Mortgage Association ("Fannie Mae"), Fannie Mae acquired the Statutory Power of Sale through the assignment of mortgage. *Id.* Fannie Mae, upon acquisition and assignment, had the authority to exercise the power of sale when the borrower defaulted. *Id.* Applying the Court's holding in *Mruk* to the facts of this case, when MERS assigned its interest in the Mortgage to IndyMac, MERS transferred authority to exercise the Statutory Power of Sale back to IndyMac. When IndyMac executed the Fourth assignment of mortgage in favor of DBNTC, IndyMac transferred the Statutory Power of Sale to that entity, and so DBNTC acquired the authority to exercise the power of sale and foreclose on the mortgage.

Beyond *Bucci* and *Mruk*, the Rhode Island Supreme Court continues to uphold the principle that MERS has the capacity to serve as mortgagee in a mortgage agreement, and that MERS can assign its interests in a mortgage to another entity. *See, e.g., Ingram v. Mortgage Elec. Regis. Sys., Inc.*, 94 A.3d 523, 528 (R.I. 2014) (finding, "as a matter of law," that MERS could serve as mortgagee with the Statutory Power of Sale and has the ability to assign its interests in the mortgage, according to the express terms of the mortgage agreement in question); *Moura v. Mortgage Elec. Regis. Sys., Inc.*, 90 A.3d 852, 858 (R.I. 2014) (dismissing plaintiffs' argument that MERS did not have the authority to make a mortgage assignment); *Rutter v. Mortgage Elec. Regis. Sys., Inc.*, 86 A.3d 381, 382-383 (R.I. 2014) (upholding a mortgage assignment by MERS to a third party because the terms of the mortgage granted to "MERS and its assignees" the Statutory Power of Sale, meaning necessarily that the parties to the mortgage intended to grant MERS the power to assign). Most recently, the Court summarily denied and dismissed appeals of six plaintiffs challenging MERS' capacity to act as mortgagee. *See Casimiro v. Mortgage Elec. Regis. Sys., Inc.*, 99 A.3d 985 (R.I. 2014); *O'Leary v. Mortgage*

*Elec. Regis. Sys., Inc.*, 99 A.3d 986 (R.I. 2014); *Woodruff v. Mortgage Elec. Regis. Sys., Inc.*, 99 A.3d 990 (R.I. 2014); *Dennis v. Quicken Loans*, No. 13-268, slip op. (R.I. filed Sep. 25, 2014); *Orlando v. Mortgage Elec. Regis. Sys., Inc.*, 99 A.3d 989 (R.I. 2014); and *Moura v. OneWest Bank, FSB*, 99 A.3d 987 (R.I. 2014). In ordering those dismissals, the Court reiterated that "[the] assertion that MERS could not hold the mortgage without the promissory note and [has] no authority to assign the mortgage in this case is . . . without merit." *O'Leary*, 99 A.3d at 987. Moreover, the Court concluded that "[i]t is well settled that MERS may serve as mortgagee without holding the promissory note." *Woodruff*, 99 A.3d at 991.

In this case, Plaintiffs expressly agreed that MERS would be the mortgagee of their Mortgage. (Mortgage, Ex. B, p. 1.) Plaintiffs conveyed to MERS "legal title to the interests granted by Borrower in this Security Agreement," and that MERS' interests were assignable was an express condition of the agreement. (*Id.* at p. 3.) Plaintiffs' claim ignores well settled law in this jurisdiction authorizing each act that MERS undertook respecting the Mortgage, including acting as mortgagee and assigning the Mortgage to IndyMac. Plaintiffs cannot ignore that they executed a Mortgage through which they expressly agreed that MERS would be their mortgagee, and they may not ignore conclusive precedent that rejects their theory that MERS may not assign or otherwise enforce the Mortgage. Defendants request dismissal of Plaintiffs' Complaint because Rhode Island law does not support Plaintiffs' claims or conclusions regarding MERS' authority to act.

## C. PLAINTIFFS FAIL TO STATE A CLAIM RESPECTING THE VALIDITY OF THE ASSIGNMENTS OF MORTGAGE

Even if Plaintiffs have standing to challenge the assignments of mortgage, they fail to allege any facts sufficient to state a viable claim. Under Rhode Island law, an assignment of mortgage that is executed, acknowledged, notarized, and recorded carries a presumption of

validity. *Van Hoecke v. First Franklin Financial Corp.*, No. KC 2009-0743, 2013 WL 1088825, at *4 (R.I. Super. Ct., Mar. 7, 2013); *Cafua v. Mortg. Elec. Registration Sys., Inc.*, No. PC 2009-7407, 2012 WL 2377404, at *8 (R.I. Super. Ct. June 20, 2012). The party challenging the validity of an assignment of mortgage must present clear and convincing evidence that the assignment of mortgage was false, defective or fraudulently made. *Van Hoecke*, 2013 WL 1088825, at *4; s*ee also Dolan v. Hughes*, 40 A. 344, 344 (R.I. 1898). A plaintiff's "unverified, conclusory statements concerning the authority of the individuals who executed the assignments of the Mortgage and the acknowledgement of the Mortgage are insufficient to rebut the strong presumption in favor of the validity carried by the certificates of acknowledgements and recorded documents." *Seng v. Mortg. Elec. Registration Sys., Inc.*, No. PC 2011-2784, 2013 WL 1490360, at *1 (R.I. Super. Ct. Apr. 2, 2013).

Notwithstanding Plaintiffs' contrary assertions, the assignments comply with the terms of the Recording Statute. The Recording Statute provides:

> "Every conveyance of lands, tenements or hereditament absolutely, by way of mortgage, or on condition, use or trust . . . shall be void unless made in writing duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands, tenements or hereditaments are situated." R.I. Gen. Laws § 34-11-1.

On its face, the First Assignment demonstrates that on December 8, 2008, MERS transferred the Mortgage interest in 25 Knight Street, Cranston, Rhode Island to IndyMac. (First Assignment, Ex. C, p. 1.) The First Assignment was signed by Johnson-Seck, an individual identified as a Vice President of MERS, was notarized and recorded in the Cranston land evidence records. (*Id.*) Similarly, the Fourth Assignment demonstrates that FDIC, as receiver for IndyMac, transferred the IndyMac's interest in the Mortgage to DBNTC on November 3, 2011. (Fourth Assignment, Ex. G, p. 1.) The Fourth Assignment was signed by San Pedro, who was identified as Attorney in Fact for FDIC, was notarized and recorded in the Cranston land evidence records.

(*Id.*) Having satisfied the requirements of § 34-11-1, both the First and Fourth Assignments carry a presumption of validity.

In contrast to the affirmative proof demonstrating the validity of First and Fourth Assignments, Plaintiffs allege no facts to demonstrate that those assignments of mortgage are invalid. Instead, Plaintiffs rely on conclusory allegations that have no factual support and that the Court has no obligation to accept. For instance, although Plaintiffs claim that "San Pedro had no authority to assign," they allege no facts to support this bald assertion. (Complaint, ¶ 52.) Plaintiffs also claim that "San Pedro was an employee of OneWest not the FDIC," but there are no factual allegations to support this contention beyond the contention itself. (*Id.* at ¶ 53.) Without alleging any facts to overcome the presumptive validity of the assignments of mortgage, Plaintiffs cannot sustain a challenge to the validity of the assignments of mortgage and the Court should dismiss the complaint.

**D. RHODE ISLAND LAW PERMITS DBNTC, AS ASSIGNEE OF PLAINTIFFS' MORTGAGE, TO FORECLOSE**

Plaintiffs' attempt to challenge DBNTC's authority to foreclose fails as a matter of law because Rhode Island law allows both a mortgagee and its assigns to invoke the Statutory Power of Sale. *Bucci*, 68 A.3d at 1087-88; *see also Mruk*, 82 A.3d at 537. The Statutory Power of Sale permits a "mortgagee or his, her or its … successors or assigns" to sell property granted to it by a mortgage agreement if "default shall be made in the [mortgage's] performance[.]" R.I. Gen. Laws §34-11-22 (1956). The non-judicial foreclosure process generally, including the right to invoke the power of sale, is contractual. *Bucci*, 68 A.3d at 1087-88. The mortgage in *Bucci* and Plaintiffs Mortgage contain precisely the same language, both conveying the Statutory Power of Sale to the lender and lender's successors and assigns. (Mortgage, Ex. B, p. 3.) *See Bucci*, 68 A.3d at 1081. The Mortgage's grant of the Statutory Power of Sale to "Lender" also binds and

benefits the lender's successor and assigns, which in this case, as a result of the Fourth Assignment, is DBNTC. Plaintiffs' allegation that DBNTC cannot invoke the Statutory Power of Sale because only the original lender, IndyMac, may do so, therefore, fails to state a claim as a matter of Rhode Island law.

**E. POSSESSION OF THE NOTE IS NOT REQUIRED TO FORECLOSE**

Plaintiffs' allegations concerning the possession of the Note are irrelevant to DBNTC's authority to foreclose. In their complaint, Plaintiffs contend that DBNTC never acquired possession of the Note and therefore never obtained the right to enforce it by foreclosing on the Property. (Compl. ¶¶ 85-94.) This contention, however, is directly contrary to the well settled law of this jurisdiction. Under Rhode Island law, a mortgagee does not need to physically possess a promissory note in order to validly foreclose on a property. *Bucci*, 68 A.3d at 1086; *Mruk,* 82 A.3d at 537. Rhode Island law permits the authorized agent of the note holder to stand in the shoes of the mortgagee and "enforce the obligation the mortgage secures" by foreclosing on behalf of the owner of the note. *Bucci,* 68 A.3d at 1088-89; see also *Clark*, 7 F.Supp.3d at 178-180 (holding that plaintiff lacked standing where he asserted assignment was void because MERS did not hold both mortgage and note at time of execution and acknowledging universal rejection of alleged unity requirement); *Mruk*, 82 A.3d at 537 ("the transactional structure whereby equitable title to the mortgage was held by the lender and by each of its successors and assigns . . . while MERS held legal title to the mortgage was consistent with the law of this state."). This Court has recognized that the MERS framework, which separates the legal from the beneficial interest, is consistent with Rhode Island law. *See In re Mortgage Foreclosure Cases*, No. 11-mc-88-M-LDA, 2013 WL 4735638 at *3 (D.R.I. Sept. 3, 2013). Thus, Plaintiffs' allegation that DBNTC is prohibited from initiating foreclosure without demonstrating

possession of the Note fails to challenge to DBNTC's authority to foreclose as a matter of law, and the Court should dismiss the complaint because it fails to state a plausible claim.

**F. PLAINTIFFS' REMAINING ASSERTIONS REGARDING THE PROCEDURES AND VALIDITY OF THE FORECLOSURE ARE UNFOUNDED, CONCLUSORY, AND FAIL TO STATE A PLAUSIBLE CLAIM FOR RELIEF.**

Finally, Plaintiffs plead numerous conclusory and unfounded allegations to support their claim that the foreclosure might be invalid. (Complaint, ¶¶ 84, 95, 98.) For example, although Plaintiffs assert that the Note "is current or has been satisfied by Plaintiff or another third party," they alleged no facts beyond this bare assertion. (*Id.* at ¶ 84.) In *Era*, Plaintiff "made the somewhat unbelievable assertion that either she paid the mortgage in full or a third party paid her mortgage for her," and this Court concluded that it was "a bald assertion if there ever was one," declining to "credit it as plausible without more information regarding any alleged payments or satisfaction of the debt." 8 F.Supp.3d 66, 73 (D.R.I. 2014) (citing *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal")); *see also Clark*, 7 F.Supp.3d at 181. Moreover, just as in *Clark*, Plaintiffs here have alleged no further facts to indicate that they were not in default, and they have failed to meet the "'low, but … real' threshold of plausibility on a motion to dismiss." 7. F.Supp.3d at 181. Similarly, Plaintiffs' general fraud allegations are unsupported and do not conform to Federal of Civil Procedure's 9(b) particularity requirement." *Id.* at 182. The various alternatives put forth by Plaintiffs to challenge the foreclosure are no more than bald, unfounded assertions, and cannot support any viable claim. The complaint should therefore be dismissed.

## VI. CONCLUSION

For the reasons stated above, Defendants MERS, OneWest, and DBNTC, respectfully request dismissal of this case.

Respectfully submitted,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ONE WEST BANK, FSB, AND DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE HOME EQUITY MORTGAGE LOAN ASSET-BACKED TRUST SERIES INABS 2007-B, HOME EQUITY MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES INABS 2007-B,

By Their Attorney,

*/s/ Samuel C. Bodurtha*

Samuel C. Bodurtha, #7075
HINSHAW & CULBERTSON LLP
321 South Main Street
Suite 301
Providence, RI 02903
401-751-0842
401-751-0072 (facsimile)

Dated: March 17, 2015

**CERTIFICATE OF SERVICE**

I, Samuel C. Bodurtha, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 17, 2015.

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha